**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DIANA DE LA GARZA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-2566 |
| | § | |
| KIRK KEMPTHORNE, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM AND ORDER

Pending before the court is defendant's motion for summary judgment. Dkt. 15. Upon consideration of the motion, the response, and the applicable law, the motion is GRANTED.

### BACKGROUND

Plaintiff Minerva Diana De La Garza, a Hispanic female, filed this suit against Kempthorne on August 21, 2008, alleging she had been discriminated against and was subjected to a hostile working environment because of her race. Dkt. 1. De La Garza began working for the Department of the Interior ("DOI") in the Minerals Revenue Management Section in 1987. Dkt. 16 at 1. In 1992, De La Garza was selected for a management training program instead of Carol Green, an African American female. *Id.* at 2. Green then transferred to an office in Denver, Colorado. *Id.* In 1993, De La Garza received a promotion to GS-13 supervisor. *Id.* at 1. In 2004, Green returned as De La Garza's immediate supervisor. Dkt. 16 at 2. De La Garza asserts that since Green's return to Houston, Green has been gossiping about De La Garza to the other employees, raising her voice at De La Garza, undermining De La Garza's authority with her own employees, and showing favoritism to African American employees. Dkt. 15, Ex. 2 at 21–22, 37; Dkt. 1 at ¶¶ 12, 13. De La

1

Garza asserts that Green is doing this because De La Garza was selected for the management training program in 1992 instead of Green and because Green hates Hispanics. Dkt. 15, Ex. 2 at 76, 79, 86.

Although De La Garza does not provide any direct evidence of gossip, she asserts that since Green's return, employees have treated her differently and alleges Green's gossip as the cause. *Id.* at 87. She gives examples of snide remarks from employees around the office, of employees giving her disparaging looks, and of whispering in hallways. *Id.* at 87–88. De La Garza alleges that the instances of Green undermining her authority, raising her voice at De La Garza, and favoring African Americans happened frequently. For example, in November 2004, De La Garza cancelled the telecommuting privileges of three employees on her team, Dee Thompson, an African American, Yvette Henry, an African American, and Michelle D'Sousa.[1] Dkt. 15, Ex. 2 at 12, 14, 15, 21–23. Green immediately met with De La Garza about the decision, specifically as it applied to Dee Thompson. *Id.* at 16–17. De La Garza alleges that Green raised her voice during this meeting, and that the meeting itself was an example of Green undermining De La Garza's authority and favoring African Americans. *Id.*

De La Garza also asserts that, at times, Lonnie Kimball discriminated against her as well. *Id.* at 68. Lonnie Kimball was the program manager over Green and De La Garza from November 2004 until his recent retirement in 2010. Dkt. 15, Ex. 8; Dkt. 16 at 2. As evidence that Kimball discriminated against her, De La Garza provides three examples. First, an employee told De La Garza that another employee, Cindy Nguyen, said she overheard Green and Kimball making disparaging comments about Hispanics at a meeting at Shell Oil. Dkt. 15, Ex. 2 at 77–79. Second, throughout 2006, De La Garza had performance issues with a few employees on her team, some of

---

[1] Although De La Garza could not remember the race of Michelle D'Sousa, she stated that D'Sousa was "American" and not Hispanic or African American. Dkt. 15, Ex. 2 at 14–15.

2

whom then asked to be transferred. Dkt. 15, Ex. 2 at 31, 50–51. In October 2006, Lonnie Kimball interviewed some employees on De La Garza's team inquiring as to whether or not they wanted a transfer. *Id.* at 62–66. De La Garza alleges that similar interviews were not conducted with the employees of other GS-13 managers. *Id.* at 68. Lastly in 2006, a position opened up for area manager and De La Garza was not selected. *Id.* at 101–103. De La Garza admits that she did not apply for this position. *Id.* at 101–103.

De La Garza maintains that she made numerous complaints to management about the problems she was facing. Dkt. 1 at ¶ 21. In September 2006, De La Garza requested Kimball transfer her from under Green's supervision. Dkt. 16 at 5. Kimball granted this request and transferred De La Garza to Gary Grant's supervision. *Id.*; Dkt. 15, Ex. 2 at 53.

On October 7, 2006, De La Garza contacted an EEO counselor about these issues. Dkt.15, Ex. 5. Subsequently, on November 15, 2006, Green gave De La Garza her Performance Appraisal Plan ("Appraisal") for the period of October 1, 2005 to September 30, 2006. Dkt. 1 at ¶ 22. On a scale between 1 and 5, De La Garza received two 4's and two 3's, for an average of 3.5. Dkt. 15, Ex. 4 at 13. This equated to a rating of "Fully Successful." *Id.* at 13. A rating of "Fully Successful" was considered average and was a lower rating than De La Garza had received the previous year.[2] *Id.* at 92. De La Garza claims that Will Galleaud, an African American, was a similarly situated employee who was also working for Green during that period and received a higher rating on his Appraisal. *Id.* at 85–86, 95, 124.

---

[2]The DOI had only used that system for one year prior to the Appraisal in question, so there is no data available for the ratings De La Garza received in previous years. Dkt. 15, Ex. 2 at 91–92.

3

ANALYSIS

Kempthorne filed a Motion for Summary Judgment on all claims.[3] Dkt. 15, 18. Kempthorne asserts that the majority of the events that De La Garza alleges to be discriminatory are barred by her failure to contact an EEO counselor within 45 days of the event. Dkt. 15 at 4. Additionally, Kempthorne argues that De La Garza has failed to show a prima facie case of discrimination and hostile work environment. *Id.* at 3. After reviewing the summary judgment record, the court finds that De La Garza has failed to meet her burden on all claims.

**A. Summary Judgment Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

---

[3] In addition to moving for summary judgment on the claims of discrimination and hostile work environment, Kempthorne also address a possible claim of retaliation. De La Garza, however, did not plead a claim of retaliation in her complaint, nor did she address this issue in her response. *See* Dkts. 1, 15. The court, therefore, does not address this issue.

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token,

the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B. Failure to Exhaust Administrative Remedies**

Federal employees must meet certain conditions before they can file suit under Title VII. *Yee v. Baldwin-Price*, 325 F. App'x 375, 378 (5th Cir. 2009). First, they must contact an EEO counselor within 45 days of the alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1). Failure to meet this requirement may bar the employee from bringing suit based on the alleged act, absent application of equitable defenses to the claim that an employee failed to exhaust administrative remedies. *Yee*, 325 F. App'x at 378. However, acts that would otherwise be time barred can be considered as background evidence if they are relevant to defendant's motivation behind an alleged discriminatory act that is not, itself, time barred. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103, 122 S. Ct. 2061 (2002) (acts barred under Title VII statute of limitations can be used as background evidence in a timely claim); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (using event outside the filing period as background information in evaluating claim for hostile work environment); *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992) (discussing the relevance of time-barred acts to illuminate current discriminatory practices).

De La Garza's failure to contact an EEO counselor until October 7, 2006 bars her from basing her claims of discrimination and hostile work environment on the majority of the events described in her complaint. Kempthorne argues that because De La Garza did not make initial contact with an EEO counselor until October 7, 2006, any of the events that took place before August 23, 2006, should not be considered as a basis for any of De La Garza's claims. Dkt. 15 at 4. De La Garza urges the Court to accept prior informal and unrecorded complaints that De La Garza made to management as

6

sufficient contact under 29 C.F.R. § 1614.105(a)(1). Dkt. 16 at 5. The regulation, however, plainly states that a complainant must initiate contact with a counselor; informal complaints to a manager do not suffice. *See* 29 C.F.R. § 1614.105(a)(1); *see also Klugel v. Small*, 519 F. Supp. 2d. 66, 71 (D.D.C. 2007) ("There is no support for the argument [that reporting discriminatory conduct to a manager is sufficient] and the court rejects it."). Therefore, only events that occurred on or after August 23, 2006, can be considered in reviewing De La Garza's claims.

**C. Discrimination**

A plaintiff may use either direct or circumstantial evidence to prove claims for discrimination and hostile work environment. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3, 103 S. Ct. 1478 (1983). If a plaintiff can produce direct evidence that, if believed, would prove these claims without inferences, she is not required to prove all the elements of a prima facie case. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S. Ct. 613 (1985).

When circumstantial evidence is offered, courts proceed under the *McDonnell Douglas* burden shifting method. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973). Under the *McDonnell Douglas* method, the burden is first on the plaintiff to prove a prima facie case of discrimination *Id.* at 802. To show a prima facie case of discrimination, plaintiffs must show that: (1) they are a member of a protected class under Title VII; (2) they were qualified for the position; (3) they were subjected to an adverse employment action; and (4) were either replaced by someone outside the protected class or other similarly situated employees that were not in the protected class were treated more favorably. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). Once this is done, the burden shifts to the defendant to show a legitimate non-discriminatory reason for its actions. *Id.* The burden then shifts back to the plaintiff to show that the reason proffered by the defendant is either untrue (pre-text theory), or while true, was only one reason for the action and that the protected

7

characteristic of the plaintiff was another motivating factor (mixed-motives theory). *Id.* at 804.; *see also Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (describing the merging of the pre-text and mixed-motives theories as the modified *McDonnell Douglas* approach).

The only direct evidence of discrimination offered by De La Garza was the statement allegedly made by Green and Kimball about Hispanics. Dkt. 15, Ex. 2 at 77–79. This statement is not only hearsay without an exception, but is also time barred. The analysis, therefore, must proceed under the *McDonnell Douglas* burden shifting method. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

Kempthorne argues that De La Garza has failed to make a prima facie case of discrimination. Dkt. 15 at 15. Specifically, Kempthorne contends that De La Garza has failed to show an adverse employment action or that similarly situated employees were treated differently. *Id.* De La Garza asserts that a lower rating on her Appraisal was an adverse employment action because it immediately affected her compensation, and that Galleaud was a similarly situated employee that was treated differently. Dkt. 16 at 6; Dkt. 15, Ex. 2 at 22–24. Even assuming De La Garza can establish a prima facie case of race discrimination, her claims still fail because De La Garza does not provide any evidence that the legitimate non-discriminatory reasons put forth by Kempthorne for the lower Appraisal rating were pretext.

Kempthorne states that the reasons behind the "Fully Successful" rating were not race related. Dkt. 15, Ex. 4. Green gave De La Garza a rating of 3 on one of the elements because her reports were not getting updated regularly in the computer system. *Id.* at 7, 14–17. Green had discussed this problem with De La Garza on a number of occasions and had not seen improvement in her work. *Id.* Additionally, Green gave De La Garza a rating of 3 on the other element because she received numerous complaints from employees about the way De La Garza interacted with them. Dkt. 15, Ex.

4 at 38–45. Thus, Kempthorne has produced evidence of a legitimate non-discriminatory reason for rating De La Garza "Fully Successful".

De La Garza, however, asserts that the reasons Kempthorne gives for the lower rating are untrue—they are merely a "sham" used to "mask the atrocities" occurring at the DOI. Beyond this allegation, however, De La Garza fails to present any evidence that they are untrue. Dkt. 16 at 9. In fact, De La Garza admitted in her informal grievance that she was confused about using the computer systems, and her goals for the year. Dkt. 15, Ex. 3, 5. She also described the various problems that she had with her employees during the rating period, and stated that these employees would often go to Green when they had problems with her. Dkt. 15, Ex. 2 at 17, 25–27. Having failed to show that Kempthorne's reasons behind the lower Appraisal rating are untrue, the motion for summary judgment is granted with respect to the discrimination claim.

**D. Hostile Work Environment**

De La Garza asserts that she was harassed in many different forms on a regular basis since Green returned to the Houston office in 2004. Dkt. 16 at 3, 11. Kempthorne, however, argues that De La Garza has failed to establish a prima facie case of hostile work environment. Dkt. 15 at 18. Specifically, Kempthorne argues that De La Garza failed to show that the harassment was based on race and that the harassment was severe and pervasive enough to affect a term of her employment. *Id.*

In order to prevail on a claim of hostile work environment, a plaintiff must show that; "(1) [s]he is a member of a protected class; (2) [s]he suffered unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected [her] job; and (5) the employer was responsible." *Johnson v. TCB Const. Co.*, 334 F. App'x 666, 670 (2009) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). The harassment must be so "severe and pervasive as to alter the conditions of [the plaintiff's] employment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133, 124 S. Ct.

9

2342 (2004).  When evaluating whether or not a work environment was hostile, the court looks at the totality of the circumstances.  *Green v. Adminis. of Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002) (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)).  These may include the severity and frequency of the conduct, and the degree to which it effects the employee's work performance.  *Id.* at 655–56.

The court need only address whether the harassment was based on race.  De La Garza argues that because, in her opinion Green hates Hispanics, the hostile work environment created by Green—through gossiping, raising her voice, undermining De La Garza's authority, and favoring African American employees—was based on race.  Dkt. 15, Ex. 2 at 21–22, 37; Dkt. 1 at ¶ 12, 13.  Kempthorne counters that there is no evidence that any harassment De La Garza suffered was based on race.  Dkt. 15 at 18.  The only direct evidence that De La Garza offered that Green disliked Hispanics was the comment that was overheard at a meeting at Shell Oil.  Dkt. 15, Ex. 2 at 77–79.  As discussed above, this hearsay comment is time barred and, therefore, cannot be considered.  The other examples provided by De La Garza of the hostility of her work environment—the gossiping about her in particular, the undermining of her authority, and Green raising her voice at De La Garza—were directed only at De La Garza.  De La Garza, however, is not the only Hispanic person under Green's control nor in the office, and she has produced no evidence that these activities happened to other Hispanics who worked in the office.  Although De La Garza may have found her environment hostile, that does not mean that the hostilities were based on race.  An employee's subjective belief that the hostilities they were facing were based on race, alone, is not sufficient for a hostile work environment claim.  *Cavalier v. Clearlake Rehabilitation Hosp., Inc*., 306 Fed. App'x 104, 107 (5th Cir. 2009).  The plaintiff has failed to demonstrate a prima facie case.  Therefore, Kempthorne is granted summary judgment on the hostile work environment claim.

## CONCLUSION

Because the court finds that De La Garza has failed to overcome Kempthorne's legitimate, non-discriminatory reason for the lower Appraisal rating and has not established a prima facie case of hostile work environment, summary judgment in favor of Kempthorne is appropriate on all claims. The motion for summary judgment, therefore, is GRANTED.

It is so ORDERED.

Signed at Houston, Texas on April 8, 2010.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY